IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

DAVID CROSBY, *et al.*                                                                PLAINTIFFS

v.                              Case No. 4:22-cv-00557-KGB

GREENWOOD MOTOR LINES, INC.
d/b/a R+L CARRIERS, *et al.*                                               DEFENDANTS

<u>ORDER</u>

Before the Court are Malcolm Phinney's appeal and objections to United States Magistrate

Judge J. Thomas Ray's findings and rulings (Dkt. No. 302), Mr. Phinney's motion to withdraw

motions (Dkt. No. 304), and defendants Greenwood Motor Lines, Inc. d/b/a R+L Carriers

(hereinafter "Greenwood") and Matthew Dakus's (collectively "Defendants") motion for

sanctions (Dkt. No. 310).  The pending motions have been fully briefed and the Court held a

hearing on the motion for sanctions on June 2, 2025.  The motions are ripe for decision.  For the

following reasons, the Court denies Mr. Phinney's appeal of Judge Ray's findings and rulings

(Dkt. No. 302), denies as moot Mr. Phinney's motion to withdraw motions (Dkt. No. 304), and

denies Defendants' motion for sanctions (Dkt. No. 310).

Also pending is the motion and stipulation of dismissal with prejudice of plaintiffs David

Crosby, Heather Crosby, Tristan Conrad, and Canyon Conrad, individually, and by and through

his guardian Heather Crosby (hereinafter "Plaintiffs") (Dkt. No. 280).  Having ruled on all the

pending motions, the Court grants Plaintiffs' motion and stipulation of dismissal with prejudice

(Dkt. No. 280) and instructs the Clerk to close the case.

I.    Background

This case stems from a multi-vehicle accident that occurred on November 23, 2021, on

Interstate 30 in Saline County, Arkansas (Dkt. No. 1).  The parties were set to begin a jury trial on

August 26, 2024, but they reached a settlement agreement on the eve of trial (Dkt. No. 244). On April 18, 2023, the Court entered a protective Order that expressly rejected a sharing provision sought by Plaintiffs (Dkt. No. 49) (hereinafter "the Protective Order").

On November 17, 2023, Mr. Phinney filed a separate lawsuit arising from the same multi-vehicle accident. *See Phinney v. Greenwood Motor Lines, Inc. d/b/a R+L Carriers et al.*, Case No. 4:23-cv-1095-DPM (hereinafter ("the *Phinney* case"). On August 26, 2024, Mr. Phinney filed a motion to transfer and notice of related case in the *Phinney* case. *Id*. at Dkt. No. 31. Judge Marshall denied the motion to transfer determining that "the issues in this kind of case tend to be particularized to the specific vehicles involved" and that "[t]he focus here is what happened to Phinney downstream" *Id*. at Dkt. No. 35. The *Phinney* case proceeded separately with separate scheduling and protective orders.

On August 21, 2024, the Court held a pre-trial hearing in this case, and there was a text entry made on the docket reflecting the pre-trial hearing's occurrence (Dkt. No. 261). On August 23, 2024, the Court held a continuation of the August 21, 2024, pre-trial hearing by telephone and another text entry was made on the docket reflecting its occurrence (Dkt. No. 263).

On August 26, 2024, the day this case was set for trial, Mr. Phinney filed a motion to intervene for limited purpose (Dkt. No. 269). The motion requested that the Court permit Mr. Phinney to intervene for the limited purpose of modifying the Protective Order to permit the sharing of documents in the *Phinney* case (*Id*., ¶ 1). In the motion, Mr. Phinney acknowledged the Protective Order and the fact that Defendants had refused to produce to him in the *Phinney* case evidence this Court had ordered to be produced in this case (*Id*., ¶ 17). Mr. Phinney sought the confidential documents that had been produced in this case including phone records of Mr. Dakus,

electronic logging device records, and the depositions of fact witnesses that the parties had taken in this case (*Id.*, ¶ 17). Defendants opposed the motion (Dkt. No. 277).

On November 19, 2024, while the Court had Mr. Phinney's motion to intervene under advisement and unbeknownst to Defendants, Richard Quintus, an attorney for Mr. Phinney, contacted the official court reporter of the August 23, 2024, telephonic pre-trial conference and requested a copy of the unredacted transcript. Mr. Quintus represented to the court reporter that he was an attorney of record in this case because his firm had filed a motion to intervene; that motion remained pending at the time. The court reporter prepared the transcript at Mr. Quintus's request and provided Mr. Quitus with an unredacted copy on November 22, 2024. On the same day, a text entry was made on the docket notifying all PACER users of the following information:

> Transcript may be viewed only at the public terminals in the Clerk's office. Copies of transcript are only available through the Official Court Reporter before the deadline for Release of transcript Restriction. After that date it may be obtained through PACER. DEADLINES: Notice of Intent to Request Redaction due 11/29/2024. Redaction Request due 12/13/2024. Redacted Transcript Deadline set for 12/23/2024. Release of transcript Restriction set for 2/20/2025. (fcd)

(Dkt. No. 282). Defendants received notice of the docket entry on November 22, 2024, but nowhere in the docket entry does it state who requested the transcript. On November 25, 2024, Defendants filed their notice of intent to request redaction of transcript, and on December 12, 2024, Defendants filed their motion for redaction of transcript identifying by page and line the portions of the transcript they believed were protected from public disclosure by the Protective Order (Dkt. Nos. 283; 284). The Duncan Firm did not respond to these filings and notify Defendants or the Court of its receipt of the unredacted transcript.

On December 23, 2024, over a month after receiving the unredacted transcript of the August 23, 2024, pre-trial hearing, Mr. Phinney filed a motion for permission to review sealed judicial records and rulings without redaction (Dkt. No. 286). In this motion, Mr. Phinney

specifically noted his outstanding motion to intervene to modify the Protective Order and identified transcripts regarding this Court's rulings as an item that he would like to review (*Id.*). Mr. Phinney listed 20 of the Court's Orders that he wanted to review (Dkt. No. 286-1). The Orders were sealed because the Court determined that they contained information protected by the Court's Protective Order. Mr. Phinney also specifically requested unsealing "court reporting transcription," but he did not notify the Court or counsel that he was already in possession of the unredacted transcript of the August 23, 2024, pre-trial hearing (*Id.*, ¶ 21). Defendants opposed Mr. Phinney's motion (Dkt. No. 290).

On the same day, Mr. Phinney filed a "notice," which is a proposed sharing provision protocol detailing the deposition testimony and other documents he believed could be shared under his proposed "sharing provision protocol." (Dkt. No. 288). As part of this proposal, Mr. Phinney references the lack of a sharing provision in the Protective Order (Dkt. No. 288, ¶¶ 7–8).

On January 30, 2025, the Court entered an Order referring to Judge Ray Mr. Phinney's motion to intervene, motion for permission to review sealed judicial records and rulings without redaction, and Defendants' motion for redaction of transcript (Dkt. No. 291).

On February 14, 2025, Judge Ray held a hearing on the referred motions (Dkt. No. 292). At the hearing, Judge Ray denied Mr. Phinney's motion to intervene, denied Mr. Phinney's motion for permission to review sealed judicial records and rulings without redaction, and granted Defendants' motion for redaction of transcript (Dkt. No. 293). During the February 14, 2025, hearing there was discussion between Judge Ray and Defendants regarding whether the transcript from the August 23, 2024, telephonic pre-trial hearing was publicly available on PACER and unredacted. Because Judge Ray was able to access the transcript of the August 23, 2024, he believed that due to a docketing error the unredacted transcript may have been available to the

public through PACER. Judge Ray asked counsel for Mr. Phinney whether he had seen the unredacted transcript. Phillip Duncan, counsel for Mr. Phinney, stated on the record that he had seen the unredacted transcript. Mr. Duncan did not state how he had accessed the unredacted transcript. Later in the hearing, counsel for Defendants stated that she also believed the unredacted transcript may be available on PACER.

However, on February 18, 2025, Niki Cung, counsel for Defendants, advised Judge Ray in a letter that the unredacted August 23, 2024, pre-trial hearing transcript was not publicly available on PACER. Ms. Cung expressed concern about the Duncan Firm's possession of the unredacted transcript (Dkt. No. 295).

On February 20, 2025, the redacted transcript of the pre-trial hearing was released on PACER according to Judge Ray's ruling at the February 14, 2025, hearing (Dkt. No. 294).

On February 25, 2025, Ms. Cung reported in correspondence to Judge Ray that she discovered that Mr. Quintus had requested and received the unredacted transcript from the court reporter in November 2024 while Mr. Phinney's motion to intervene to modify the Protective Order was pending (Dkt. No. 296). Mr. Duncan responded in correspondence to Judge Ray that Mr. Quintus obtained the transcript by using the process described on the public docket and the transcript was a public record of a public hearing (Dkt. No. 297).

On March 5, 2025, Judge Ray held a status conference to discuss the correspondence he received from the parties (Dkt. No. 298). At the conclusion of the hearing, Judge Ray determined that Mr. Quintus had violated the Protective Order by procuring the unredacted transcript of the August 23, 2024, pre-trial hearing, and he ordered counsel for Mr. Phinney to deliver the unredacted transcript back to the Court with an affidavit from the Duncan Firm, P.A. certifying that all copies of the transcript had been destroyed as required by the Protective Order. Judge Ray

also set a deadline for Defendants to initiate a Rule 11 motion for sanctions if they chose to do so. Mr. Quintus and the Duncan Firm complied with Judge Ray's order to return the transcript and provide the affidavit.

On March 18, 2025, Mr. Phinney filed his appeal and objections to Judge Ray's findings and rulings maintaining the August 23, 2024, pre-trial hearing transcript was a public record (Dkt. No. 302). Defendants filed a response to the appeal and objections (Dkt. No. 308), and Mr. Phinney replied to the response (Dkt. No. 319).

On March 19, 2025, Mr. Phinney filed a motion to withdraw motions seeking to withdraw his motion to intervene for limited purpose, proposed sharing provision protocol, and motion for permission to review sealed judicial records and rulings without redaction (Dkt. No. 304). Defendants responded in opposition to the motion to withdraw (Dkt. No. 307).

On April 15, 2025, Defendants filed their motion for sanctions (Dkt. No. 310). Mr. Phinney filed a memorandum response in opposition to Defendants' motion for sanctions (Dkt. No. 316-1). Defendants filed a reply in support of their motion for sanctions (Dkt. No. 320). On June 2, 2025, the Court held a hearing on the motion for sanctions at which the Duncan Firm appeared with counsel Gene McKissic.

## II.    Appeal Of Judge Ray's Findings And Rulings

### A.    Background

On January 30, 2025, the Court entered an Order referring to Judge Ray Mr. Phinney's motion to intervene, motion for permission to review sealed judicial records and rulings without redaction, and Defendants' motion for redaction of transcript (Dkt. No. 291).

Judge Ray held a hearing on the motions on February 14, 2025 (Dkt. No. 292). At the hearing, Judge Ray denied Mr. Phinney's motion to intervene, denied Mr. Phinney's motion for

permission to review sealed judicial records and rulings without redaction, and granted Defendants' motion for redaction of transcript (Dkt. No. 293).

When Judge Ray considered the Defendants' motion for redaction, there was discussion regarding whether the unredacted transcript from the August 23, 2024, telephone pre-trial hearing was publicly available on PACER. Because Judge Ray was able to access the transcript of the August 23, 2024, hearing when preparing for the hearing from his Court account, he believed that the unredacted transcript had perhaps mistakenly been made publicly available. Judge Ray asked Mr. Duncan whether he had seen the transcript. Mr. Duncan stated on the record that he had seen the unredacted transcript.[1] Mr. Duncan did not disclose at the hearing that his partner, Mr. Quintus, had ordered and obtained the unredacted transcript from the court reporter. Peyton Watts, counsel for Defendants, stated that she believed that the unredacted transcript was only available to her because she was counsel for a party in the case. Later in the hearing, after an exchange with Mr. Quintus on a different topic, Judge Ray asked Ms. Watts whether she had been able to determine whether the transcript was public record, and Ms. Watts stated that she was able to access it. Despite what the Court and Ms. Watts thought was true about public access of the unredacted transcript, Judge Ray granted Defendants' motion for redaction because he determined that Defendants were entitled to the redactions under the Protective Order.

A few days later, Ms. Cung sent a letter to Judge Ray advising him that, after further investigation, counsel for Defendants had discovered that the transcript of the August 23, 2024, pre-trial hearing was not publicly available on PACER (Dkt. No. 295). Ms. Cung expressed concern about the Duncan Firm's possession of the unredacted transcript (Dkt. No. 295). In a

---

[1] Judge Ray's response to Mr. Duncan's admission at the hearing that he had viewed the transcript indicates that Judge Ray believed that Mr. Duncan had reviewed the transcript on the Court's PACER system.

second letter to Judge Ray dated February 25, 2025, Ms. Cung reported to Judge Ray that she discovered that Mr. Quintus had requested and received the unredacted transcript from the court reporter in November 2024 while Mr. Phinney's motion to intervene to modify the Protective Order was pending. Ms. Cung also asserted that, after obtaining the transcript, Mr. Phinney had filed his motion for permission to review sealed judicial records and rulings without redaction, including transcripts of the rulings in this case in which counsel failed to mention that they already had some of the information they were requesting from the Court (Dkt. No. 296). Ms. Cung asserted that Duncan Firm's possession of the unredacted pre-trial hearing transcript violated the Protective Order and resulted in irreparable damage to Defendants (*Id.*, at 2). Mr. Duncan responded in correspondence to Judge Ray that Mr. Quintus obtained the transcript from the court reporter by using the process described on the public docket (Dkt. No. 297, at 2). Mr. Duncan further states in the letter that the transcript was a public document because on the docket entry it was not designated confidential or under seal (*Id.*).

On March 5, 2025, Judge Ray held a status conference to discuss the correspondence he received from the parties (Dkt. No. 298). At the end of the hearing, Judge Ray determined that the Duncan Firm's possession of the unredacted pre-trial transcript was a violation of the Protective Order, and he ordered the Duncan Firm to return the unredacted transcript to the Court. Judge Ray also set a date for Defendants to file a motion for sanctions under Rule 11 should they choose to do so.

In his 32 page appeal of Judge Ray's findings and rulings at the February 14, 2025, and March 5, 2025, hearings, Mr. Phinney asserts that he is seeking to correct what he characterizes as "a misunderstanding of the facts and applicable law." (Dkt. No. 302, ¶¶ 2, 90). Mr. Phinney contends that the misunderstanding is "that the public hearing transcript was sealed, when it was

not sealed," and he appeals "the application of law regarding public access to judicial records" (Dkt. No. 302, ¶ 2). For relief, Mr. Phinney asks that the Court find that the August 23, 2024, hearing transcript was public and "that the protective order in *Crosby, supra,* not be used as a shield to bar relevant discovery in the collateral, companion case of Malcolm Phinney." (*Id.*, ¶ 92). The Court writes to make clear that counsel for Mr. Phinney is not the same as counsel for Mr. Crosby; there are separate lawyers and separate firms representing the two separate plaintiffs in these two separate cases. Admittedly, defense counsel is the same in *Crosby* and *Phinney*. In other words, counsel for Mr. Phinney throughout this process is attempting to obtain the work of other lawyers in a separate case to benefit Mr. Phinney – without Mr. Phinney's counsel putting in the work or incurring the costs or fees. A Protective Order entered of record in *Crosby* stood in his way.

### B.    Standard

A magistrate judge may rule on any non-dispositive pre-trial matter, except those proscribed by statute. *See* 28 U.S.C. § 636(b)(1)(A). Federal Rule of Civil Procedure 72(a) permits a party to submit objections to a magistrate judge's ruling on non-dispositive matters. *See* Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). Under Local Rule 72.1(VII)(B) of the Eastern and Western Districts of Arkansas, "[a] party may appeal the Magistrate Judge's ruling by filing a motion within fourteen (14) days of the Magistrate Judge's decision unless a shorter period is set by the District Judge or Magistrate Judge." Local Rule 72.1(VII)(B). Such a motion "shall specifically state the rulings excepted to and the basis for the exceptions." *Id.* On appeal of a magistrate judge's order, a district judge "may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). "A finding is clearly erroneous when 'although there is evidence to support it, the

reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Lisdahl v. Mayo Found.*, 633 F.3d 712, 717 (8th Cir. 2011) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)).

### C.   Analysis

#### 1.   Timeliness Of Appeal

Under Local Rule 72.1(VII)(B), a party has 14 days to appeal a magistrate judge's decision. Here, Mr. Phinney filed his appeal on March 18, 2025. Accordingly, to the extent that Mr. Phinney is attempting to appeal any finding of fact or conclusion of law made by Judge Ray at the February 14, 2025, hearing Mr. Phinney's appeal is untimely. More than 30 days passed after Judge Ray made findings of fact and conclusions of law on February 14, 2025, to arrive at his decisions to deny Mr. Phinney's motion to intervene, deny Mr. Phinney's motion for permission to review sealed judicial records and rulings without redaction, and grant Defendants' motion for redaction of transcript (Dkt. No. 293). The Court will not consider Mr. Phinney's appeal of Judge Ray's findings of fact and conclusions of law on these motions (Dkt. No. 302, at 28–29).

#### 2.   The Protective Order

At the February 14, 2025, hearing, Judge Ray ruled on all of the motions referred to him by the Court, but in correspondence with Judge Ray following the hearing, Defendants raised a new issue regarding a possible violation of the Protective Order by counsel for Mr. Phinney that came to light because of disclosures made during the February 14, 2025, hearing on the referred motions (Dkt. Nos. 295; 296). The Court held a status conference with the parties on March 5, 2025, to discuss the allegations made in the correspondence (Dkt. Nos. 299; 301). At the conclusion of the March 5, 2025, hearing, after reviewing the correspondence from the parties and hearing the arguments of counsel, Judge Ray concluded that the Duncan Firm had violated the

10

Protective Order by obtaining an unredacted copy of the August 23, 2024, pre-trial hearing (Dkt. No. 301, at 57). Judge Ray ordered that the Duncan Firm return the pre-trial hearing transcript to the Court with an affidavit certifying that all other copies of the transcript have been destroyed. The Duncan Firm complied with Judge Ray's Order (*Id.*, at 57–58).

Mr. Phinney objects to Judge Ray's finding that it violated the Protective Order. First, Mr. Phinney maintains that the hearing transcript was a public document that was "publicly accessible from August 23, 2024, to February 14, 2025" (Dkt. No. 302, ¶ 6). Copies of the transcript were not publicly accessible during this time period. As set forth in the docket entry made when the transcript was provided to Mr. Quintus, "[c]opies" of the unredacted transcript were "only available through the Official Court Reporter before the deadline for Release of Transcript Restriction" (Dkt. No. 282).[2] Only after that date could the transcript be "obtained through PACER." (*Id.*).

Mr. Phinney insists on relying on a statement made by Judge Ray at the February 14, 2025, hearing when he mistakenly believed that, due to a mistake, the unredacted pre-trial hearing transcript was publicly available to all PACER users. The inaccuracy of this statement was later cleared up by counsel for Defendants in her letter to the Court dated February 18, 2025, at the March 5, 2025, hearing, and is clear by the text of Docket Nos. 282 and 294 in *Crosby* which indicate that the unredacted pre-trial hearing transcript was *never* made publicly available to PACER users, and the redacted version of the pre-trial hearing transcript became publicly available

---

[2] The Court observes that the unredacted transcript was not publicly accessible to anyone between August 23, 2024 and November 22, 2024, when it was prepared by the court reporter at Mr. Quintus's request. On November 22, 2024, the unredacted transcript was docketed by the court and at that point it could be "*viewed* only at the public terminals in the Clerk's office." (Dkt. No. 282).

to PACER users on February 20, 2025 (Dkt. Nos. 282; 294).[3]  The unredacted transcript of the pre-trial hearing was only available to counsel for Mr. Phinney because, as counsel for Defendants discovered upon further inquiry, Mr. Quintus ordered it from the court reporter by representing that he had entered an appearance in the case (Dkt. No. 296).  As Judge Ray attempted to explain at the March 5, 2025, hearing, Mr. Quintus's decision to obtain a copy of the unredacted transcript of the pre-trial hearing was riddled with problems given that Mr. Phinney's motion to intervene to modify the Protective Order to include a limited sharing provision was still pending before the Court (Dkt. No. 301).  In other words, the facts belie any claim that Mr. Quintus did not know or appreciate what he was doing in this matter with respect to the hearing transcript at any point from when he first made the request of the court reporter through the hearing this Court held on the motion for sanctions.

Mr. Phinney argues that the Protective Order has no provision applying to hearing transcripts and that it "required Defendants to bear the burden to designate confidential material to prevent public disclosure." (Dkt. No. 302, ¶ 14).  The Court rejects Mr. Phinney's argument based on the language of the Protective Order.  The Protective Order provides that "designation of such material will also render confidential any copies, excerpts, summaries, or other disclosure of the substance or contents of such material.  Materials so marked or identified and all information

---

[3]  Mr. Phinney's explanation in his reply to response to appeal Judge Baker that the transcript of the pre-trial hearing was not available when Defendants' lawyers checked the docket on February 17, 2025, because "the transcript was removed from the docket for redaction pursuant to the Magistrate's Order and was re-filled on PACER as a redated copy on February 20, 2025," displays, at best, a lack of understanding about how the process for filing transcripts on the Court's docket works and, at worst, a knowing distortion of the procedure of the Court and record in this case (Dkt. No. 319, at 3).  As Judge Ray explained at length during the March 5, 2025, hearing, the transcript is withheld from access to PACER users for 90 days after it is filed on the docket. During that time, the parties can request redactions to the transcript.  At the end of the 90-day period the transcript is made available to PACER users with any court-approved redactions (Dkt. No. 301, at 39–40).  There is no removal of the transcript from the docket during this process.

derived therefrom ('Confidential Material') shall be treated in accordance with the terms of this Order." (Dkt. No. 49, at 5).  In other words, if arguments of counsel and evidentiary rulings at the pre-trial hearing contained information and documentation that the parties had previously designated as confidential pursuant to the Protective Order, then then those portions of the hearing transcript discussing the designated materials would be derived therefrom and treated as confidential under the terms of the Protective Order (*Id*.).

Mr. Phinney suggests that Defendants did not properly designate the pre-trial hearing transcript as confidential or "sealed."  Here, Defendants did put Mr. Phinney on notice of the confidential nature of the transcript when they filed a notice of intent to request redaction of the transcript on November 25, 2024 (Dkt. No. 283).  Defendants did so promptly—only three days after they received notice that the pre-trial hearing had been transcribed and would later become publicly available on PACER (Dkt. Nos. 282; 283).  Moreover, here the Court granted Defendants' motion to redact the pre-trial hearing transcript after determining that Defendants were entitled to the redactions under the terms of the Protective order (Dkt. No. 293).

Regardless, Mr. Phinney's argument fails again based on the language of the Protective Order.  Under the express terms of the Protective Order, even if Defendants had failed to designate any portion of the pre-trial hearing transcript as confidential, the "inadvertent failure" would "not alter or waive the protected and confidential nature of the document" and would not "remove it from the scope" of the Protective Order (*Id*., ¶ 4).  Defendants could not have known to act any sooner because counsel for Mr. Phinney did not advise counsel for Defendants of its actions to obtain the pre-trial hearing transcript.  Defendants believed appropriately that the could rely on the Court's procedure for permitting redaction of confidential material and the Protective Order.

Mr. Phinney relies on *Murphy v. Gospel for Asia, Inc.*, Case No. 5:17-cv-5035, 2018 WL 11422062 (W.D. Ark. 2018), to support that there is a common law presumption in favor of public access to public hearing transcripts (Dkt. No. 302, ¶¶ 47–49). In *Murphy*, the court was addressing a motion to redact a transcript from a hearing on a motion for sanctions during which confidential documents were displayed and discussed. *Id.* at *1. The Court began its analysis by noting that there is a presumption in favor of access to the transcript. *Id.* (citing *Nixon v. Warner Commc'ns*, 435 U.S. 589, 602 (1978) ("Judicial orders and hearing transcripts reflect the everyday business of the courts and clearly amount to judicial records."); *Krueger v. Ameriprise Fin., Inc.*, 2014 WL 12597948, at *10 (D. Minn. Oct. 14, 2014) (Mag. J.), *adopted by* 2015 WL 224705 (D. Minn. Jan. 15, 2015)). In *Murphy*, the Court went on to analyze whether the moving party had made a showing that sections of the transcript needed protection from access by the public and determined that "Defendants [had] made no showing, despite having drafted the instant Motion, that redaction is warranted." *Id.* at *2. Accordingly, the court denied the motion to redact in *Murphy*. *Id.* at *3.

In this case, unlike in *Murphy*, the transcript at issue was not for a hearing on a motion for sanctions but was for a pre-trial hearing at which only the lawyers for the parties involved in the *Crosby* case were present. This was a pre-trial hearing during which evidentiary issues were being discussed and decisions were being made regarding the admissibility of confidential information in the *Crosby* case. It was this type of information that influenced Mr. Phinney to file a motion to intervene for limited purpose of modifying the Protective Order in *Crosby* to obtain a document sharing provision and to permit counsel for Mr. Phinney, not a party to the *Crosby* case, to receive the documents that were being protected by the Protective Order on the day that the trial was to begin in this case (Dkt. No. 269). So, Mr. Phinney's counsel, as attorneys of record in a related case in this Court involving the same motor-vehicle collision, have much to gain by accessing the

transcript of this particular pre-trial hearing. Judge Ray determined that Defendants made a showing sufficient to redact portions of the transcript of the August 23, 2024, hearing, and Mr. Phinney did not make a timely showing that this conclusion was clearly erroneous or contrary to law.

The Protective Order permits the Court to provide appropriate relief to any party covered by the Protective Order who applies to the Court for relief from any provision of the Protective Order (Dkt. No. 49, ¶ 15). The Court cannot determine based on the record that Judge Ray's Order requiring the Duncan firm to return the unredacted pre-trial hearing transcript was clearly erroneous or contrary to law, and Mr. Phinney's appeal of Judge Ray's decision fails under Federal Rule of Civil Procedure 72 and Local Rule 72.1. The Court denies Mr. Phinney's request to return to the Duncan firm the unredacted transcript of the pre-trial hearing raised for the first time in his reply to response to appeal to Judge Baker (Dkt. No. 319, at 4, 23).

To the extent that Mr. Phinney attempts to argue in his reply that, by finding that the Duncan Firm violated the Protective Order, Judge Ray imposed a Rule 11 sanction at the March 5, 2025, hearing without using the proper procedure, that argument is not well taken. Judge Ray did not consider imposing Rule 11 sanctions on the Court's own initiative under Rule 11(c)(3) (Dkt. No. 301). Instead, Judge Ray acknowledged that Ms. Cung had indicated in her correspondence to the Court that "she wanted guidance from me with regard to whether she should seek sanctions under Rule 11(c)(2) for the violations of subparts (B)(1) and (3) of that rule," and Judge Ray stated that he is "not comfortable in giving guidance to lawyers on what they should do under rule 11. I think that that's a call that you need to make." (*Id*., at 5). Judge Ray set a schedule for briefing if Defendants chose to file a Rule 11 motion (*Id*., at 56).

Judge Ray required the return of the unredacted transcript because the Duncan Firm's possession of it violated the Protective Order.

### 3.    Conclusion On Appeal Of Judge Ray's Findings And Rulings

For these reasons, the Court determines that any attempt by Mr. Phinney to appeal any finding of fact or conclusion of law made by Judge Ray at the February 14, 2025, hearing is untimely, and the Court denies Mr. Phinney's belated motion challenging Judge Ray's ruling on Mr. Phinney's motions to intervene for the limited purpose of modifying the protective order and to review sealed judicial records (Dkt. Nos. 293; 302).[4]

After review of the transcript of March 5, 2025, hearing and the briefing of the parties, the Court finds that Judge Ray's determination that Mr. Phinney and his counsel violated the Protective Order was not clearly erroneous or contrary to law. *Lisdahl v. Mayo Found.*, 633 F.3d 712, 717 (8th Cir. 2011) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). Accordingly, the Court denies Mr. Phinney's appeal of Judge Ray's March 5, 2025, Order, and denies the Duncan Firm's request that the Court return to the Duncan Firm an unredacted transcript of the August 23, 2024, pre-trial hearing (Dkt. Nos. 302; 319).

---

[4] Even if the Court were to consider the merits of the untimely appeal of Judge Ray's February 14, 2025, rulings, the Court would find that Judge Ray's determinations were not clearly erroneous or contrary to law. Mr. Phinney has failed to demonstrate that he has Article III standing to intervene for the purpose of obtaining the documents that he seeks because he has not demonstrated that what he seeks in this Court through modification of the protective order is not available to him through proper discovery procedures in the *Phinney* litigation. *See Rightchoice Managed Care, Inc. v. Hospital Partners, Inc.*, Case No. 5:18-cv-6037-DGK, 2020 WL 5733203, *1 (W.D. Mo. 2020). Further, the parties in this case were entitled to the protections of the protective order, without modification. Courts in this district have observed that "no first amendment rights attach[] to information gained through pre-trial discovery." *See Ericson v. Ford Motor Co.*, 107 F.R.D. 92, 94 (E.D. Ark. 1985) (citing *Seattle Times Company v. Rhinehart*, 467 U.S. 20 (1984). In *Ericson*, the court interprets *Rhinehart* to mean "that trial courts have wide discretion in deciding when, under [Federal Rule of Civil Procedure] 26, protective orders are warranted," and "[w]here a party will suffer unreasonable annoyance or embarrassment, protective orders should be granted." *See Ericson*, 107 F.R.D. at 94.

III.    **Motion To Withdraw Motions**

On March 19, 2025, after Judge Ray held his February 14, 2025, hearing, Mr. Phinney filed a motion to withdraw his motion to intervene for limited purpose and brief, his motion for share protocol, and his motion for permission to review sealed judicial records and ruling without redaction (Dkt. No. 304).  Mr. Phinney states that he is a plaintiff in a separate case – the *Phinney* case – and because of "overlapping issues and to some extent overlapping counsel involved in the cases," the Court referred to Judge Ray Mr. Phinney's motion for permission to intervene for limited purposes and his motion for permission to review sealed judicial records and rulings without redaction (*Id.*, ¶ 1).  Mr. Phinney contends that he did not file his lawsuit intending to litigate in two courts but asserts that he sought judicial economy to "obtain information to reduce and streamline facts and reduce depositions and obtain the true facts" (*Id.*, ¶ 11).  According to Mr. Phinney, he has appealed the decisions of Judge Ray to "preserve all his rights," but Mr. Phinney moves to "voluntarily withdraw all of his motions from this lawsuit, so that the Court may proceed to close out this matter."

Defendants respond that the motions that Mr. Phinney seeks to withdraw have already been denied by the Court (Dkt. No. 293).  Defendants argue that because the Court has already denied the motions, they cannot now be withdrawn, and Defendants request the Court deny Mr. Phinney's motion to withdraw.  Defendants further maintain that they are not accusing the Duncan Firm of a conspiracy to litigate in two courts but are focused on the Duncan Firm obtaining an unredacted pre-trial hearing transcript that contained information protected from disclosure by the Protective Order in the *Crosby* case (Dkt. No. 307, at 2–3).  Defendants argue these belated filings were made in an effort to cover up the violation of the Protective Order (*Id.*, at 2).

The Court agrees that, because Judge Ray has already denied the motions, these motions cannot be withdrawn. Judge Ray denied the motion to intervene for limited purpose and the motion to review sealed judicial records and rulings without redaction at the February 14, 2025, hearing. As set forth above, Mr. Phinney did not make timely objections to Judge Ray's rulings denying these motions. Accordingly, Judge Ray's rulings denying these motions are final, and Mr. Phinney cannot withdraw the motions. Mr. Phinney's proposed sharing protocol was filed as a "notice" and not a motion, so the Court never made a ruling on the "notice." Accordingly, the Court denies Mr. Phinney's motion to withdraw motions (Dkt. No. 304).

### IV.    Motion For Sanctions

#### A.    Background

Before the Court is Defendants' motion for sanctions (Dkt. No. 310). Mr. Phinney has filed a memorandum response in opposition to Defendants' motion for sanctions (Dkt. No. 316-1). Defendants filed a reply in support of their motion for sanctions (Dkt. No. 320). At Defendants' request, the Court held a hearing on the motion for sanctions on June 2, 2025, at which counsel for Defendants and Mr. McKissic, counsel for the Duncan Firm, were present (Dkt. No. 322).

Defendants served on counsel for Mr. Phinney, and filed, their motion for sanctions only after counsel for Mr. Phinney filed his appeal of Judge Ray's decision (Dkt. Nos. 302; 310). In their motion for sanctions, Defendants assert that they are entitled to sanctions because of the Duncan Firm's violation of Federal Rules of Civil Procedure 11(b)(1) and (3) (Dkt. No. 310, ¶ 17). In addition to an appropriate sanction, Defendants seek fees, costs, and expenses associated with filing the motion. Mr. Phinney argues, among other things, that Mr. Quintus obtaining a public access document is not a subject for Rule 11 sanctions, and Defendants have not identified any

pleading filed by Mr. Phinney that is false or was filed for an improper purpose or that lacks merit (Dkt. No. 316-1, at 1).    For the following reasons, the Court denies Defendants' motion for sanctions (Dkt. No. 310).

### B.    Standard

Pursuant to Federal Rule of Civil Procedure 11(c), the Court may impose sanctions if Federal Rule of Civil Procedure 11(b) has been violated.  Rule 11(b) requires an attorney to ensure that, to the best of their knowledge:  (1) their submission is not being presented for any improper purpose; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a non-frivolous argument for modifying existing law or establishing new law; (3) the factual contentions have evidentiary support or, will have evidentiary support after further discovery; and (4) the denials of factual contentions are warranted on the evidence, or are reasonably based on belief or a lack of information.  Fed. R. Civ. P. 11(b).

When a party files a motion for sanctions under Rule 11, the party must serve the motion, but wait 21 days after serving the motion before filing it with the court.  Fed. R. Civ. P. 11(c)(2) This 21–day "safe harbor" period gives the served party the opportunity to correct or withdraw its papers, and is a procedural prerequisite to an award of sanctions.  "Rule 11 does not license a district court to sanction any action by an attorney or party that it disapproves of.  Imposition of sanctions *must be based on a pleading, motion or other paper* signed and filed in federal court." *In re Sanford L. Firm*, 106 F.4th 706, 716 (8th Cir. 2024) (quoting *Coltrade Int'l, Inc. v. United States*, 973 F.2d 128, 131 (2d Cir. 1992) (cleaned up) (emphasis added)).  "[F]indings of frivolous litigation, dilatory tactics, or bad faith are insufficient to support the award of sanctions under Rule 11." *Id.*

### C.    Analysis

Here, Defendants point to the Duncan Firm's request and receipt of the August 23, 2024, pre-trial hearing transcript in violation of the Protective Order as a violation of Rule 11(b) (Dkt. No. 311, at 6–10).  Defendants also assert that the request for the pre-trial hearing transcript converted the motion to intervene into a filing for an improper purpose and that the motion for permission to review sealed judicial records and rulings without redaction was filed for an improper purpose under Rule 11(b) (*Id.*, at 10–12).  Finally, Defendants argue that Mr. Phinney's motion to withdraw motions was filed for an improper purpose (*Id.*, at 12–13).

Mr. Phinney's primary response is that Defendants have "improperly used a discovery [P]rotective [O]rder" as a shield to protect them from turning over discovery to Mr. Phinney.  Mr. Phinney further contends that Judge Ray's "unsupervised redaction procedure was improper as it removed public facts from a public document without weighing public interest (Dkt. No. 316-1, at 21–27).  Mr. Phinney contends that Defendants' request for Rule 11 sanctions are improper procedurally and substantively because the August 23, 2024, pre-trial hearing transcript is a "public judicial record," the improper use of a discovery Protective Order weaponizes the judicial system against an innocent party and hides facts, and Defendants' motion for Rule 11 on two reasonable and proper discovery motions is contrary to law and fact at the time of filing.[5]

---

[5]  Mr. Phinney also argues in his response to the motion for Rule 11 sanctions that "First Amendment Rights are implicated in this matter" (Dkt. No. 316-1, at 53–56).  The Court does not view Mr. Phinney's First Amendment argument as relevant as a defense to the motion for sanctions.  There was no trial in this matter that Mr. Phinney or his counsel was prevented from attending.  Neither Mr. Phinney nor his counsel attempted to attend the telephonic pre-trial conference on August 23, 2024 (Dkt. No. 263).  Furthermore, here the Court has favored public access of Court proceedings by providing access to the pre-trial hearing transcript after the transcript was redacted to account for materials that the parties to the lawsuit designated as protected under the Protective Order and the Court agreed should be protected (Dkt. No. 294).

In their reply in support of their motion for sanctions, Defendants clarify that on March 20, 2025, they served on counsel for Mr. Phinney their proposed motion for sanctions, and they filed the motion with the Court 26 days later, in compliance with the 21-day safe harbor provision of Rule 11(c) (Dkt. Nos. 305; 320, at 5). This is supported by the record of the March 5, 2025, hearing where the Court describes what Ms. Cung, counsel for Defendants, described in her correspondence with the Court as "a very serious violation of the protective order that Judge Baker entered on April 18 of 2023." (Dkt. No. 301, at 4). The correspondence from Ms. Cung to Judge Ray indicates that she sought "guidance from the Court as to next steps" (Dkt. Nos. 295, at 2; 296, at 2). At the conclusion of the March 5, 2025, hearing, Judge Ray gave Defendants a deadline for filing a Rule 11 motion for sanctions and advised counsel to be "very specific in itemizing the conduct that it believed supports a Rule 11 sanction. Judge Ray gave Mr. Phinney's counsel 14 days to respond to the Rule 11 motion and Defendants seven days to file a reply (Dkt. No. 301, at 56). It is clear from the discussion on the record of the March 5, 2025, hearing transcript that Defendants had not, at that stage, filed a motion for sanctions.

Defendants further clarify that they have never maintained that the transcript of the August 23, 2024, pre-trial hearing is their property or trade secret (Dkt. No. 320, at 5). Relatedly, Defendants argue that Mr. Phinney is not entitled to the unredacted material in the August 23, 2024, pre-trial hearing transcript just because Judge Marshall has entered a protective order in the *Phinney* case. Mr. Phinney spends much of his time in his response to the motion for sanctions arguing that Judge Ray made on February 14, 2025, were improper, including his motion to redact the August 23, 2024, pre-trial hearing transcript. As set forth above, Mr. Phinney did not timely appeal any of Judge Ray's rulings on February 14, 2025, and the time for doing so has passed. Accordingly, the Court will not reconsider Judge Ray's findings of fact or conclusions of law from

February 14, 2025, including his ruling granting Defendants' motion to redact portions of the August 23, 2023, pre-trial hearing transcript because it contained information covered by the Protective Order (Dkt. No. 293).

Mr. Phinney also spends a great deal of time in response to Defendants' motion to intervene arguing that Defendants use the Protective Order as a "sword and shield."  Judge Marshall denied Mr. Phinney's motion to transfer.  *Phinney*, Case No. 4:23-cv-1095-DPM, Dkt. No. 35 (Dec. 3, 2024).  The Court denied Mr. Phinney's motion to intervene for limited purposes in this case (Dkt. No. 293).  Defendants state that they have responded to relevant discovery in the *Phinney* case, and the Court has no reason to delve into discovery issues in the *Phinney* case to decide the motion for sanctions before it.

To the extent that Defendants argue in their motion for sanctions that Mr. Phinney violated the Protective Order by possessing an unredacted copy of the transcript of the August 23, 2024, pre-trial hearing, the Court agrees as set forth in detail above.  However, this determination does not lead the Court to conclude that sanctions must be imposed.  As noted above, sanctions may only be imposed based on a pleading, motion, or other paper that is signed and filed with the court. *In re Sanford L. Firm*, 106 F.4th at 716.  Here, the unredacted transcript of the August 23, 2024, pre-trial hearing is not a pleading, motion, or other paper that counsel for Mr. Phinney signed and filed with the Court.

Defendants argue that the transcript of the pre-trial hearing that was obtained in violation of the Protective Order turned Mr. Phinney's motion to intervene from a filing with a proper purpose into a filing with an improper purpose (Dkt. No. 320, at 11).  Defendants also argue that Mr. Phinney's motion for permission to review sealed judicial records and rulings without redaction was filed for an improper purpose (*Id*., at 11-12).  Mr. Phinney responds that the motions

were based on well-established facts and legal authority at the time of filing (Dkt. No. 316-1, at 47–52). Mr. Phinney asserts that the motion for limited intervention was filed to obtain a fact deposition from a collateral, companion case on the same chain collision and emphasizes that there is a protective order in place in the *Phinney* case and that there was a risk that the information gathered in this case could be destroyed (*Id.*, at 47). Mr. Phinney maintains that the motion for permission to review sealed judicial records and rulings without redaction was filed for the opportunity for Mr. Phinney to obtain permission to review unredacted documents filed under seal with the Clerk including motions, exhibits, rulings and transcripts of the rulings (*Id.*, at 50). Mr. Phinney contends that his argument was supported by a case where a similar motion was granted and the case involved trucking litigation (*Id.*, at 50–51 (citing *CRST Expedited, Inc. v. TransAm Trucking, Inc.*, 2018 WL 9880439, at *3–*4 (N.D. Iowa, Oct. 9, 2018) (determining that permissive intervention was the procedurally proper way for a third-party to seek to unseal judicial records)).

Mr. Phinney attempted to withdraw both the motion to intervene for a limited purpose and motion for permission to review sealed judicial records and rulings before Defendants filed their motion for sanctions, but the motion to withdraw came too late (Dkt. Nos. 293; 304; 310). The motion to withdraw was filed over a month after Judge Ray ruled on both referred motions, which had been pending for several months, and Mr. Phinney did not file a timely appeal of Judge Ray's February 14, 2025, rulings on these motions.

Rule 11(c) authorizes the Court, in its discretion, to impose sanctions on an attorney who presents a pleading that contains factual contentions lacking in evidentiary support, particularly when the attorney continues to advocate for the pleading after the opportunity for further investigation or discovery. *See Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004, 1008 (8th Cir.

2006) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)); *see also* Fed. R. Civ.

P. 11(b)(3). "[T]he standard under Rule 11 is whether the attorney's conduct, 'viewed objectively,

manifests either intentional or reckless disregard of the attorney's duties to the court.'" *Jones v.

United Parcel Serv., Inc.*, 460 F.3d 1004, 1010 (quoting *Perkins v. Spivey*, 911 F.2d 22, 36 (8th

Cir. 1990)).

This has been a difficult case, made more difficult by the choices of counsel for Mr.

Phinney that the Court frankly has struggled to understand, other than to acknowledge — counsel

for Mr. Phinney throughout this process has attempted to obtain the work of other lawyers in a

separate case to benefit Mr. Phinney – without Mr. Phinney's counsel putting in the work or

incurring the costs or fees.

Even with this acknowledgment, the Court does not find that the facts before the Court

support a determination that counsel for Mr. Phinney presented pleadings to the Court that contain

factual contentions lacking in evidentiary support or that counsel's conduct, viewed objectively,

represents intentional or reckless disregard of their duties to the Court. Nonetheless, the conduct

and choices made are disappointing.

## V.    Motion And Stipulation Of Dismissal

Also pending before the Court is Plaintiffs' motion and stipulation of dismissal with

prejudice (Dkt. No. 280). For good cause shown, the Court grants the motion and dismisses with

prejudice Plaintiffs claims against Defendants (*Id.*).

## VI.    Conclusion

It is therefore ordered that:

1.      The Court denies Mr. Phinney's appeal of Judge Ray's findings and rulings (Dkt.

No. 302).

24

2.      The Court denies as moot Mr. Phinney's motion to withdraw motions (Dkt. No. 304).

3.      The Court denies Defendants' motion for sanctions (Dkt. No. 310).

4.      The Court grants the motion and stipulation of dismissal with prejudice of plaintiffs David Crosby, Heather Crosby, Tristan Conrad, and Canyon Conrad, individually, and by and through his Guardian Heather Crosby (Dkt. No. 280).   Plaintiffs' case against defendants Greenwood Motor Lines, Inc., d/b/a R+L Carriers, Matthew Dakus, John Does 1-3 is dismissed with prejudice, with each party to bear their own attorney fees and costs.  The Clerk is instructed to close the case.

It is so ordered this 30th day of September, 2025.

Kristine G. Baker
Chief United States District Court Judge